IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**DARRELL YOUNG**

v.  Civil No. 1:23-cv-0369-HSO
Criminal No. 1:20-cr-48-HSO-RPM-1

**UNITED STATES OF AMERICA**

### MEMORANDUM OPINION AND ORDER DENYING DEFENDANT DARRELL YOUNG'S MOTION [328] TO VACATE UNDER 28 U.S.C. § 2255 AND MOTION [329] FOR RELEASE ON BAIL

BEFORE THE COURT are Defendant Darrell Young's ("Young") Motion [328] to Vacate under 28 U.S.C. § 2255 and Motion [329] for Release on Bail. The Court, having considered the Motions [328], [329], the parties' briefs, relevant legal authority, and the record in Defendant's criminal case, finds that because "the files and records of the case conclusively show that the prisoner is entitled to no relief," both Motions [328], [329] should be denied without an evidentiary hearing. 28 U.S.C. § 2255(b).

I. BACKGROUND

A. Procedural history

On May 12, 2020, Defendants Young, Antony Daniel Abreu ("Abreu"), and Christopher Q. Nguyen ("Nguyen") were arrested after Young and Abreu met with a confidential informant to purchase seventeen kilograms of cocaine. Compl. [1] at 6. All three Defendants were charged in a two-count indictment. Indictment [35] at 1-2. Count 1 charged Defendants with conspiring to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and Count 2 charged Defendants

1

with knowingly attempting to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841. *Id.*

Nguyen pleaded guilty, Minute Entry, July 16, 2021, but Young and Abreu proceeded to a jury trial, Minute Entry, July 26, 2021. Abreu testified at trial and, under examination by Young's attorney, Robert K. Pisarich ("Pisarich"), stated that Young was not involved in or aware of any of the illegal conduct. Trial Tr. [276] at 80-85. Young opted not to testify at trial, and affirmed to the Court under oath that it was his own knowing, intelligent, and voluntary decision not to do so. *Id.* at 114-15. Following a seven-day trial, the jury convicted Young and Abreu on both counts. *See* Redacted Jury Verdict Form [198].

The United States Probation Office prepared a Presentence Investigation Report [261] ("PSR") to assist the Court in sentencing Young. *See* PSR [261] (under seal). The PSR [261] originally calculated Young's total offense level as 32, and his criminal history category as III. *Id.* at 10-13. At sentencing, both parties objected to the offense level. *See* Tr. [308] at 2-4. The Government objected to the PSR's [261] failure to assess Young with an aggravating role enhancement and thus increase the offense level by two levels. *Id.* 2-3. Pisarich, on behalf of Young, objected to the PSR [261] holding Young accountable for seventeen kilograms of cocaine, arguing that he should be held accountable for only eight kilograms. *Id.* at 3-4. The Court sustained the Government's objection and overruled Pisarich's, and Young was assessed a final total offense level of 34, such that his Sentencing

Guidelines imprisonment range was 188 to 235 months. *Id.* at 32-41. The Court sentenced Young to serve 235 months of imprisonment. *Id.* at 66.

Young and Abreu both filed direct appeals, with Young seeking reversal of "the district court's (1) denial of a for-cause challenge to a potential juror and (2) use of an aggravating role enhancement." *United States v. Abreu*, No. 21-60861, 2023 WL 234766, at *1 (5th Cir. Jan. 18, 2023) (per curiam). The Fifth Circuit rejected both appeals, and, as to Young, found that considering the small size of the enterprise and Young's role in it, which "included arranging for transportation, counting cash, and providing items to process the cocaine[,] . . . the district court's finding that Young was an 'organizer' [wa]s 'plausible in light of the record as a whole.'" *Id.* at *3.

Young timely filed the instant Motion [328] to Vacate under 28 U.S.C. § 2255 and a Motion [329] for Release on Bail, asserting that his trial counsel was ineffective. *See* Mots. [328], [329]. Pisarich has filed an affidavit in response to the Motion [328], *see* Aff. [333], and the Government has filed a Response [334], *see* Resp. [334]. Young has filed a Reply [335].[1] *See* Reply [335].

B.   Young's § 2255 Motion [328]

1.   Young's arguments

Young bases his ineffective assistance of counsel claim on three grounds. *See* Mot. [328] at 3-17. First, he asserts that Pisarich was ineffective for failing to call Abreu and Christopher Reese ("Reese") as witnesses to testify at trial, on the theory

---

[1] Young's initial filing was unsigned, but he subsequently filed an attached signature page on June 20, 2024. *See* Attach. [336].

3

that their testimony would have exonerated him. *Id.* at 5-9. Young contends that Abreu would have testified that Young "had no prior knowledge of the arranged drug deal, nor the presence of a large sum of money, and that Mr. Abreu had misled [Young] by misinforming him that he traveled to the State of Mississippi to engage in lawful business[.]" *Id.* at 8. Young claims that Reese would have testified similarly because Abreu "revealed" this information to Reese. *Id.* at 5-6.

Young's second argument is that Pisarich "labored under an actual conflict of interest, and deprived [Young] of his Sixth Amendment rights to conflict-free counsel and effective assistance of counsel[.]" *Id.* at 10. He states that Pisarich sought to be relieved as Young's counsel but "was being forced by the Court to represent [Young] against his (counsel's) will." *Id.* at 11. Young points to seven alleged "lapses" caused by this conflict, specifically that Pisarich: (1) rejected Young's request to call Reese as a witness; (2) declined to call Abreu as a witness; (3) did not object to the admission of a tape he claims was unconstitutionally withheld until trial; (4) refused to call an employee from the Taco Bell where the arrest occurred, whom he believes could have provided "critical testimony regarding [his] lack of involvement[;]" (5) failed to object to alleged government misconduct of "altering a record that [Young] surreptitiously made of conversations between Mr. Abreu and the confidential informant[;]" (6) prevented Young from testifying as a witness on his own behalf; and (7) misinformed Young "that if he did not accept a 20-year plea offer[,] that he was certain to receive a [l]ife term of imprisonment if convicted after a trial." *Id.* at 11-12.

Young's third ground claims that Pisarich and appellate counsel were deficient for failing to present evidence that would negate the application of the aggravating role sentencing enhancement. *Id.* at 15-17. Specifically, Young points to Abreu and Reese's potential testimony, as well as an Affidavit [161-4] from Reese that "attest[ed] to Mr. Abreu's exculpatory statement[.]" *Id.* at 16. Finally, Young separately moves for release on bail pending resolution of the Motion [328] to Vacate, because he has purportedly established "substantial constitutional claims on which he has a high probability of success[.]" *Id.* at 18 (quotations omitted).

2. Pisarich's Affidavit [333]

In his Affidavit [333], Pisarich explains that he did not call Reese to testify because Reese's testimony would have constituted objectionable hearsay. Aff. [333] at 4. He points out that once Abreu testified at trial that Young was not culpable for the instant offenses, "Young's complaint herein became a moot issue." *Id.* As to the assertion that he refused to object to the admission of a tape Young claims was unconstitutionally withheld until trial, Pisarich states that he filed a Motion [159] in Limine to Prohibit the Government from Introducing Certain Recordings or Body Wire Tapes at Trial. *Id.* at 5; *see also* Mot. [159]. Even though Pisarich informed Young he had discussed this issue with the Government, and was told no recording existed, Pisarich still filed the Motion [159] due to Young's insistence that he do so.[2] Aff. [333] at 5-6. Pisarich maintains that he had no grounds to object to its

---

[2] The Court denied the Motion [159] without prejudice. *See* Order [165] at 2.

introduction at trial because the Government eventually disclosed the recording and Pisarich reviewed it with Young before the trial. *Id.* at 6.

Pisarich next contends that based on the information Young provided and the evidence presented at trial, no Taco Bell employee was in or near the vehicle where Young's arrest occurred. *Id.* Pisarich did not object to the Government's alleged altering of a recording that Young claims he made of conversations between himself, Abreu, and the confidential informant, because Pisarich "was never aware of any proof or solid leads that the [G]overnment had been involved in any misconduct against Young for which he complains of here." *Id.* at 6-7.

On Young's decision not to testify, Pisarich highlights that during the trial, the Court ensured that Young was informed of and understood his rights, that he made a knowing, intelligent, and voluntary decision not to testify, and that no one had persuaded or convinced him not to testify. *Id.* at 7-8. Pisarich argues that "[i]f there ever was a time in which Young would have made an objection against Pisarich that Pisarich refused to call him as a witness in his own behalf it would have been when being questioned by [the Court] on this subject matter." *Id.* at 8.

Regarding plea negotiations, Pisarich points out that Young was offered a plea deal that would have capped any sentence at twenty years, and he maintains that he never told Young that he would receive a sentence of life imprisonment in order to get him to not take a plea offer. *Id.* at 9. Despite this, Young "clearly stated to Pisarich at all times that he was innocent and was never going to plead

6

guilty to any of these charges at any time whatsoever." *Id.* In Pisarich's view, "[a]ll that Young is trying to do here is get another bite at the apple . . . ." *Id.* at 10.

As for any alleged conflict of interest, Pisarich reiterates that, "[a]s stated in Pisarich's motion to withdraw . . . , it was Young who informed Pisarich that Young was terminating Pisarich as his attorney in this case[,]" but the Court denied the Motion [172] to Withdraw after a hearing in which Young stated he no longer wanted Pisarich as his attorney. *Id.* at 10-11. Pisarich further notes that he zealously defended Young, and "if there had been obvious deficiencies in Pisarich's performance as Young's attorney during trial, [the Court] would have noted same on the record." *Id.* at 11.

In response to Young's argument on the aggravating role enhancement, Pisarich asserts that he did not object to the PSR [261] on this issue because the enhancement was only added after the Government objected to the PSR [261]. *Id.* at 13. Pisarich states that, in response to the Government's objection, he argued against the enhancement but the Court agreed with the Government. *Id.* at 14.

3. <u>The Government's Response [334]</u>

The Government takes the position that the majority of Young's complaints should be disregarded because they take issue with valid trial strategy. *See generally* Resp. [334]. As to Pisarich's alleged failure to call Reese or Abreu, it points out that while Pisarich did not call Abreu, he nevertheless had the opportunity to examine Abreu about Young's role in the offense when Abreu

7

testified at trial, *id.* at 7-8, and any potential testimony offered by Reese would have been hearsay, *id.* at 8.

Turning to any alleged conflict of interest, the Government states that Young fails to demonstrate any deficient performance, and reiterates the same arguments Pisarich submitted in response to the first two alleged "lapses." *Id.* at 10-12. It also restates Pisarich's argument as to the Taco Bell employee, while adding that Young "does not specify what this witness would have stated," such that the argument is speculative. *Id.* at 12.

The Government notes that Young has not "presented any evidence to substantiate" the claim that it altered a recording of Young, Abreu, and the confidential informant, *id.* at 13, adding that "even if Young came to his decision not to testify due to his attorney's advice, his attorney's recommendation to avoid the risk of a potentially damaging cross-examination was not unreasonable[,]" *id.* at 14.

The Government points to Pisarich's Affidavit [333] to counter Young's argument that Pisarich gave an erroneous estimate as to the length of a potential sentence, and highlights that even if Pisatich had done so, giving an erroneous estimate is not "necessarily indicative of ineffective assistance." *Id.* at 15 (quotations omitted). Finally, the Government maintains that Pisarich did respond to the Government's position that Young should receive the aggravating role enhancement, and the fact that the Court ruled against Young is not the fault of his counsel. *Id.* at 16.

4.    Young's Reply [335]

In his Reply [335], Young argues that the failure to call Reese was not trial strategy but "deception by counsel" and that if he had known Reese was not going to testify, he would have entered an open plea, which he claims "would have resulted in a considerably shorter prison term."  Reply [335] at 1-2.  Young also reiterates that Pisarich "labored under a conflict of interest" that was created by an "irreconcilable difference[,]" *id.* at 4, and he also realleges the seven "lapses" and claims that if the jury had been able to hear Reese's testimony, it would have weighed Abreu's testimony differently, *id.* at 5-7.

## II.  DISCUSSION

A.    Relevant law

A prisoner may move to vacate, set aside, or correct his conviction or sentence under 28 U.S.C. § 2255 on any one of four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255(a).  Upon a finding that any one of these four grounds are present, a court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255(b).

After the Government answers a § 2255 motion, the district court reviews the motion, the answer, any transcripts, and the record to determine whether an

evidentiary hearing is warranted. *See* Rule 8 of § 2255 Rules. "A § 2255 motion requires an evidentiary hearing unless either (1) the movant's claims are clearly frivolous or based upon unsupported generalizations, or (2) the movant would not be entitled to relief as a matter of law, even if his factual assertions were true." *United States v. Harrison*, 910 F.3d 824, 826-27 (5th Cir. 2018), *as revised* (Dec. 19, 2018); *see also United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) ("A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief."). "Conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013); *see also United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019).

"[A] claim of ineffective assistance of counsel is properly made in a § 2255 motion because it raises an issue of constitutional magnitude and, as a general rule, cannot be resolved on direct appeal." *United States v. Bass*, 310 F.3d 321, 325 (5th Cir. 2002). To demonstrate ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "Failure to establish either prong defeats the claim." *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997). But "mere conclusory allegations in support of a claim of ineffective assistance of counsel are

10

insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

A court must presume that "counsel's conduct f[ell] within the wide range of reasonable professional assistance . . . ," and a defendant must overcome that presumption. *Nelson v. Davis*, 952 F.3d 651 (5th Cir. 2020) (quotations omitted). To demonstrate "prejudice" in the *Strickland* sense, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Because deciding whether to call witnesses is a strategic trial decision, this Court has held that complaints of uncalled witnesses are 'disfavored' as a source of *Strickland* habeas review." *United States v. Harris*, 408 F.3d 186, 190 (5th Cir. 2005).

B. <u>Analysis</u>

1. <u>Ground 1: Whether Pisarich was ineffective for failing to call Reese and Abreu as witnesses</u>

Although Pisarich did not call Abreu to testify, he had an opportunity to examine him during the Government's case-in-chief, mooting Young's complaint on this point. *See* Tr. [276] at 80-87. During Pisarich's examination, Abreu testified that "Mr. Young had no knowledge of" the instant offense and played no role in the drug transaction. *Id.* Because Abreu had already provided the testimony Young desired, there was no need to call Abreu during Defendant's case-in-chief, such that Pisarich's conduct was objectively reasonable and Young suffered no prejudice.

As to Reese, the testimony Young seeks would have been cumulative as well as hearsay. *See* Fed. R. Evid. 403; 802. The Fifth Circuit "has previously refused to

11

allow the omission of cumulative testimony to amount to ineffective assistance of counsel." *Harris*, 408 F.3d at 191.  And because the proposed testimony was inadmissible, Young suffered no prejudice, as Reese would not have been permitted to offer the testimony Young proposes.  *See* Fed. R. Evid. 802.

In sum, Young has not shown that Pisarich was ineffective, and even if a failure to call the foregoing witnesses was objectively unreasonable, Young was not prejudiced because the Government presented ample evidence at trial to sustain a conviction on the charged counts.  *See, e.g.*, *Harris*, 408 F.3d at 190 ("[E]ven if [defense counsel] objectively should have called [an uncalled witness], [the defendant] was not prejudiced because the government could have convicted him with the ample evidence that he used a dangerous weapon.").

2.     Ground 2: Whether Pisarich "labored" under a conflict of interest

Young claims a conflict of interest existed between Pisarich and himself, such that he was deprived of his right to zealous and effective counsel.  Mot. [328] at 11-14.  "To prove ineffective assistance of counsel based on a conflict of interest, a § 2255 movant must show 'that an actual conflict of interest adversely affected his lawyer's performance.'" *United States v. Scruggs*, 691 F.3d 660, 670 (5th Cir. 2012).  In other words, Young must show that Pisarich was required to make a choice to "advanc[e] his own interests to the detriment of his client's interests[,]" *United States v. Garcia-Jasso*, 472 F.3d 239, 244 (5th Cir. 2006) (quotation omitted), such that "[a] theoretical or merely speculative conflict of interest will not invoke the

protections of the Sixth Amendment[,]" *Simmons v. Collins*, 5 F.3d 1495, 1993 WL 391524, at *1 (5th Cir. 1993) (per curiam).

Young has not articulated an actual conflict of interest, as he has not specified what the conflict was or its cause. *See* Mot. [328] at 10-14. He merely states that an irreconcilable difference existed. *See id.* This is insufficient to raise a Sixth Amendment claim. *See Scruggs*, 691 F.3d at 670. Instead, it appears Young primarily takes issue with the Court's denial of his Motion [172] to Withdraw. *See* Mot. [328] at 10-14; Reply [355] at 4-5. However, a direct attack on the Court's Order [177] could and should have been raised on direct appeal. *See United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) ("Section 2255 does not reach errors not of a constitutional or jurisdictional magnitude that could have been reached by a direct appeal."). His Motion [328] should be denied on this point for this reason alone.

But even if Young had properly alleged that a conflict existed, he has not made a credible assertion that it "adversely affected his lawyer's performance." *Scruggs*, 691 F.3d at 670 (quotations omitted). As evidence of adverse performance, Young cites seven "lapses" he claims occurred throughout the litigation. Mot. [328] at 11-14. The first and second "lapses" Young points to are that Pisarich did not call Abreu and Reese as witnesses; these assertions are without merit for the same reasons the Court previously discussed when it addressed Ground 1.

Young's third allegation is that Pisarich failed to object to the admission of a recording made by the confidential informant, but Pisarich did object to the

13

recording by filing a Motion [159] in Limine to Prohibit the Government from Introducing Certain Recordings or Body Wire Tapes at Trial. *See* Mot. [159]. The Court conducted a hearing on the Motion [159], heard arguments, and then denied the Motion [159]. *See* Order [165]. Further, the Government later disclosed the recording and Young was able to review it with Pisarich before trial, obviating any claim of prejudice.

Young next argues that Pisarich failed to call an unidentified Taco Bell employee, who could have "provided critical testimony regarding [his] lack of involvement in discussions taking place at that location between Mr. Abreu and the confidential informant." Mot. [328] at 12. However, Young fails to identify who the employee was, show that the employee was available to testify, or set out what testimony the employee would have provided. *See Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, [and] set out the content of the witness's proposed testimony . . . ."). And Young's allegations of what such a witness would have stated "are largely speculative" such that he "fails to satisfy the prejudice showing required for ineffective assistance claims based on counsel's failure to call a witness." *Id.*

Young's fifth asserted lapse is that Pisarich "failed to object to government misconduct in altering a record that Defendant surreptitiously made of conversations between Mr. Abreu and the confidential informant[.]" Mot. [328] at

14

12. Young has not elaborated upon or pointed to any evidence to support this conclusory allegation of the existence of an altered recording, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam). Simply put, "speculative and unsupported accusations of government wrongdoing do not entitle a defendant to an evidentiary hearing[,]" let alone habeas relief. *Reed*, 719 F.3d at 374.

As for Young's decision not to testify, he informed the Court under oath at trial that the decision not to testify was his own knowing, intelligent, and voluntary decision, and not the result of Pisarich's influence. Tr. [276] at 114-115. Even if Young's decision not to testify was the result of Pisarich's advice, such was not objectively unreasonable. *See Harris*, 408 F.3d at 192. As in *Harris*, "putting [Young] on the stand probably would have done more harm than good," as it would have allowed the Government to cross-examine him about his previous drug convictions, which would have severely damaged his claim that he was completely uninvolved in the instant drug transaction. *Id.* (holding that it was a valid trial strategy for a defendant to not testify where doing so would have "subject[ed] [him] to rigorous cross-examination" that would "discounted any of his other testimony"). For the same reasons, Young also suffered no prejudice.

Turning to Young's assertion that Pisarich misinformed him about any potential sentence, "[a]n erroneous estimate by counsel as to the length of an expected sentence is not necessarily indicative of ineffective assistance." *United*

*States v. Sandoval*, 45 F. App'x 319, 2002 WL 1860377, at *1 (5th Cir. 2002) (per curiam). Young merely states that "[h]ad Defendant known that he could have received a sentence of less than 20 year imprisonment after a plea, he would have considered such an offer, despite his actual innocence, in an effort to avoid a trial and a potentially draconian sentence." Mot. [328] at 12. This is entirely speculative, and not sufficient to demonstrate that he was prejudiced.[3] *See Green*, 160 F.3d at 1042-43 ("Because conclusory assertions of prejudice are insufficient to satisfy the second prong of *Strickland*, *see Kinnamon v. Scott*, 40 F.3d 731, 735 (5th Cir. 1994), [petitioner's] complaint fails."). In addition, Young did in fact receive a sentence less than twenty years. *See* J. [263] at 2.

In sum, Young has failed to point to anything in the record demonstrating that a conflict of interest or a "lapse" in performance occurred, or that he was prejudiced by any such lapse. *See Scruggs*, 691 F.3d at 670.

3. <u>Ground 3: Whether Young suffered any prejudice from any alleged ineffective representation at sentencing</u>

Young claims that the Reese Affidavit [161-4] and Abreu's testimony should have been presented at sentencing to preclude the application of the aggravating role enhancement. Mot. [328] at 15-17. But these items were already in the record and the Court was aware of them when it sustained the Government's objection and

---

[3] When the Court inquired into any plea discussions between Young and the Government, the Government stated that only one informal offer had been made, which Young quickly declined. Tr. [296] at 50-53. The Court also ensured that Young understood that it was his decision "alone whether or not to accept a plea agreement or to go to trial." *Id.*

applied the enhancement.[4]  *See* Aff. [161-4]; Tr. [276] at 80-87.  Therefore, Young was not prejudiced by any alleged failure to introduce this evidence at sentencing.

In addition, because Young challenged the Court's application of the aggravating role enhancement on direct appeal, his argument is without merit because "[c]hallenges to issues decided on direct appeal are foreclosed from consideration in a § 2255 motion." *United States v. Fields*, 761 F.3d 443, 463 n.12 (5th Cir. 2014), *as revised* (Sept. 2, 2014).  The Fifth Circuit affirmed this Court's ruling because the "finding that Young was an 'organizer' is 'plausible in light of the record as a whole.'"  *Abreu*, 2023 WL 234766, at *3 (quoting *United States v. Rodriguez*, 630 F.3d 377, 380 (5th Cir. 2011) (per curiam)).  Young suffered no prejudice on this ground.

C.  Young's Motion [329] for Release on Bail

As for Young's Motion [329] for Release on Bail, he must show both a substantial constitutional claim with a high probability of success and that an extraordinary or exceptional circumstance exists before the Court could grant it. *See United States v. Vogel*, 595 F. App'x 416, 417 (5th Cir. 2015) (per curiam); *United States v. Bishop*, 519 F. App'x 216, 218 (5th Cir. 2012) (per curiam); *United States v. Pratt*, 304 F. App'x 299, 2008 WL 5381338, at *1 (5th Cir. 2008) (per curiam).  As explained previously, Young has not shown a high probability of success on his § 2255 claim, and even if he had, he has not pointed to any

---

[4] The Court also stated that even if it had erred in resolving any of the objections raised at sentencing, it "would have imposed the same sentence as a variance or nonguideline sentence . . . ." Tr. [308] at 71-72.

17

exceptional circumstances necessitating his release. *See Pratt*, 304 F. App'x at 299, 2008 WL 5381338, at *1 ("Regardless of the merits of [petitioner's] claims, upon which the district court has not yet ruled, [petitioner] has not pointed to any 'extraordinary or exceptional circumstances' which necessitate his release to make the post-conviction remedy effective."). This Motion [319] should be denied.

### III. CONCLUSION

Because the Motion [328] and record conclusively show that Defendant Darrell Young is entitled to no relief, the Court finds that his Motion [328] to Vacate under 28 U.S.C. § 2255 should be denied without an evidentiary hearing, *see Reed*, 719 F.3d at 373 (a defendant is only entitled to an evidentiary hearing on a § 2255 motion if he has presented "independent indicia of the likely merit of his allegations" (internal citations omitted)), and his Motion [329] for Release on Bail should also be denied, *see Bishop*, 519 F. App'x at 218 ("Release should be granted pending postconviction review 'only when the petitioner has raised substantial constitutional claims upon which []he has a high probability of success, and also when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective.'" (quoting *Calley v. Callaway*, 496 F.2d 701, 702 (5th Cir. 1974)).

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant Darrell Young's Motion [329] for Release on Bail Pending Review of Motion [328] to Vacate is **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendant Darrell Young's Motion [328] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 is **DENIED** without an evidentiary hearing. The Court will enter a separate final judgment in accordance with Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED**, this the 14th day of January, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE